UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Frank
Argued at Norfolk, Virginia


JAMES ANTONIO FULLER

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0947-17-1                      JUDGE RANDOLPH A. BEALES
                                                    APRIL 24, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Timothy S. Wright, Judge

Diallo K. Morris (Black & James, P.C., on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


        The Circuit Court of the City of Chesapeake convicted James Antonio Fuller ("appellant")

of committing a hit and run in violation of Code § 46.2-894.  Appellant raises two assignments of

error on appeal.  First, appellant argues that the evidence was insufficient to support his conviction.

Second, appellant argues the trial judge erred by excluding testimony from a defense witness, which

was intended to impeach testimony of the Commonwealth's witness.

I. BACKGROUND

A. FACTS RELATED TO THE SUFFICIENCY OF THE EVIDENCE

        During appellant's bench trial, Rickelle Eley testified that she was involved in an

automobile accident with appellant on April 25, 2016.  The accident occurred in a convenience

store parking lot in Chesapeake, Virginia.  While Eley was entering the parking lot, appellant

was backing his vehicle out of a parking spot, resulting in his hitting Eley's vehicle.  Following

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the accident, Eley tried to obtain appellant's information, but appellant would not speak with her. She testified, "[W]hen I tried to speak to Mr. Fuller, he would not communicate at all with me . . . ."

Eley testified that, shortly after the accident occurred, a man whom Eley did not know approached her and appellant. She stated that this individual identified himself to her as "Dwayne Coffle," who was wearing a "white kind of tank top, T-shirt." Eley said she believed that Coffle was an off-duty police officer based on her seeing a jacket in his vehicle with what appeared to be a badge on its sleeve.[1] Eley testified that appellant and Coffle stepped away from her for a few minutes, and the men positioned themselves between some cars where Eley could not see them. She further testified that appellant gave Coffle information that included a name, phone number, license plate number, and insurance information. Eley testified that the conversation between the two men was muffled but that she heard appellant give certain information to Coffle.[2] According to both Eley and appellant, Coffle wrote down the information on a piece of paper, which he gave to Eley. No other information was exchanged. In fact, Eley testified that neither Coffle nor appellant asked for Eley's information. She stated, "I could not give [information] to him [appellant] because he would not communicate with me at all. He wouldn't say anything to me." Shortly thereafter, appellant and Coffle left the scene separately.

---

[1] For the sake of clarity, we refer to this individual as "Coffle," as the parties have done. However, Coffle did not appear at trial, and there was no factual finding from the trial court that "Coffle" was, in fact, the individual's real name. In addition, the trial judge found there was no evidence to support any conclusion that Coffle was actually a law enforcement officer.

[2] At trial, Eley could not recall the details of the information that appellant conveyed to Coffle.

Eley later determined that the information she had received was not accurate.[3] While she could not recall the name that she heard appellant give to Coffle, Eley testified that the name was not James Antonio Fuller. When she attempted that same evening to call the telephone number that she received from Coffle, the number was disconnected. In addition, the license plate number provided by Coffle for appellant's vehicle did not match the photograph of appellant's license plate that Eley took with her smartphone following the accident. She testified, "I took a picture of the actual plate, and when I compared them, they were off by different digits and letters."

Appellant testified in his defense that he did not speak with Eley because she was hysterical, and appellant said that he "didn't really want to get into any kind of confrontation." When asked to clarify what appellant meant by "hysterical," he stated, "She had her phone out, taking pictures. Oh, my gosh. I've never been into an accident. You know, stuff like that." Appellant also testified that he did not know Coffle, but he believed Coffle was an off-duty police officer after seeing a jacket with "a police emblem on the side." Appellant said that he gave his information to Coffle so that Coffle could give it to Eley. On cross-examination, appellant admitted that he did not directly give any information to Eley. Appellant also denied providing false information to Coffle or Eley, and he testified that he observed Coffle hand Eley the information before he left the scene, but that he could not see what Coffle wrote down to hand to her.

During appellant's presentation of his case at trial, the trial judge viewed the surveillance video of the accident. From this video, the trial judge concluded, "[T]here's no evidence

---

[3] After the accident, Eley was unable to make a claim with her insurance company, she testified, based on the information that she received. Approximately four weeks later, Eley was able to submit a claim after her insurance company identified appellant as the other driver from the accident, based on the picture Eley took of the license plate of appellant's vehicle.

whatsoever . . . that Ms. Eley was anything but totally under control, which, again, runs somewhat counter to Mr. Fuller's characterization of Ms. Eley at the time." Regarding Coffle's role in the incident, the trial judge found, "There's no evidence before the Court that that person [Coffle] is a police officer."[4] At the conclusion of the trial, the judge found that appellant failed to provide information as required by the statute's plain language. The trial judge stated:

> [I]t still comes down, in the Court's humble opinion, to whether or not the activities, the action if you will of the defendant in this particular case complied with both the spirit, if you will, perhaps more importantly for a criminal case, the actual letter of the law.
>
> The Court finds that . . . if, for instance, Mr. Fuller had simply said at the end to Ms. Eley, Do you have everything you need from me? I mean, he did not address her at all, and that -- I don't think he fulfilled his responsibility. For that reason, the Court finds Mr. Fuller guilty as charged . . . .

### B. Facts Related to the Excluded Testimony

During the trial, Eley testified that she heard the exchange of information between Coffle and appellant. On cross-examination, however, Eley admitted that she could not recall her testimony at the preliminary hearing on this point. Defense counsel attempted to impeach Eley's testimony by calling, as a witness, the attorney who had represented appellant during the preliminary hearing. The Commonwealth objected to this witness' testimony on the grounds of

---

[4] That finding of fact was quickly followed by the following exchange during defense counsel's first motion to strike:

> [THE COMMONWEALTH]: So I know that Counsel was referring to this individual as a police officer, and I don't know that that's an appropriate argument to make because that's not a fact that has been presented.
>
> THE COURT: And the Court would agree with you.

In addition, no subsequent evidence was offered to show that the mysterious "Coffle" was an actual law enforcement officer, and the trial judge denied appellant's second motion to strike and then convicted appellant. Therefore, the trial court implicitly found that appellant did not give his information to a state or local law enforcement officer.

"improper rebuttal" and because defense counsel did not possess a transcript from the preliminary hearing. After the trial judge confirmed that defense counsel was attempting to impeach Eley based upon her failure to recall previous testimony, the trial judge permitted defense counsel to proffer that the witness, appellant's former attorney, had heard Eley's preliminary hearing testimony. Defense counsel further proffered that Eley's previous testimony was inconsistent with her testimony at trial. After receiving the proffer, the trial judge said he would not consider the former attorney's impeachment testimony at trial.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "We must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Kelly, 41 Va. App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).

In deciding the matter before us, we need not rationalize why the strange circumstances of this case unfolded as they did. Our task is simply to determine whether the evidence was sufficient to show that appellant failed to comply with Code § 46.2-894. That statute requires the following:

> The driver of any vehicle involved in an accident . . . in which an attended vehicle or other attended property is damaged shall immediately stop as close to the scene of the accident as possible without obstructing traffic . . . and report his name, address, driver's license number, and vehicle registration number forthwith to the State Police or local law-enforcement agency, *to the person struck*

*and injured if such person appears to be capable of understanding and retaining the information*, or to the driver or some other occupant of the vehicle collided with or to the custodian of other damaged property.

Code § 46.2-894 (emphasis added).

Here, "[v]iewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), the evidence showed that appellant failed to provide his information as the statute requires. Appellant was involved in an automobile accident on April 25, 2016. Consequently, appellant had an obligation to stop and disclose his information as required in the statute. Here, the evidence is undisputed that appellant stopped after the accident; however, he refused to speak directly with Eley despite her obvious attempts to engage him. It is also undisputed that appellant left the scene before directly giving any information to her or ensuring that the information she had was correct.

In his defense, appellant testified that Eley was hysterical and that he wanted to avoid a confrontation with her. After hearing all of the testimony and viewing the convenience store's surveillance video (which defense counsel provided), the trial judge found that "there's no evidence whatsoever . . . that Ms. Eley was anything but totally under control," contrary to appellant's version of events. See Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt."). Therefore, nothing prevented appellant from conveying his information to Eley. Rather, as Eley testified, "[H]e would not communicate with me at all. He wouldn't say anything to me."

Appellant relied all too willingly, and at his own peril, on the mysterious Coffle, an individual who appellant acknowledged he did not know. The evidence showed that Coffle was

not wearing a police officer's uniform (but rather a white tank top); he was not driving a marked police vehicle; and he did not even display a police officer's badge. The only apparent basis for appellant's belief that Coffle might have been a law enforcement officer was the mysterious individual's pointing to a jacket in his vehicle with some sort of emblem on it. Simply put, appellant unreasonably relied on the supposed representations of this mysterious stranger, who emerged from the convenience store in a white tank top, when all he needed to do was to exchange his personal information with Eley. By providing his information to the woman whose vehicle he hit, appellant could have easily avoided a felony conviction.

Regarding the evidentiary issue raised by appellant in his second assignment of error, we assume without deciding that the trial court erred by not admitting the testimony that was intended to impeach the Commonwealth's witness. Code § 8.01-678 requires harmless error analysis before any judgment is reversed. "Under the harmless error doctrine, if there was 'a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.'" Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015) (ellipses in original) (quoting Code § 8.01-678). "In this case, we apply the standard for non-constitutional harmless error, which is that such error is harmless if [an appellate court] can be sure that it . . . had only a 'slight effect.'" Id. (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)). Put another way, "[i]f other evidence of guilt is so overwhelming and the error insignificant, by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict, the error is harmless." Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011).

Here, the evidence was overwhelming that appellant violated Code § 46.2-894. The testimony of Eley and appellant confirmed that appellant did not directly provide any of his information to Eley after the accident. In addition, appellant left the scene without ensuring that the

information Eley had received was accurate. The trial judge, who had the opportunity to view the surveillance video and observe the witnesses, found that Eley was not hysterical following the accident. Therefore, it was possible for appellant to directly convey his information to Eley, which she attempted to obtain. However, appellant chose to rely, at his own peril, on providing his information to a mysterious intermediary who was an apparent stranger, about whom the trial judge found there was no evidence he was a police officer. The information that the alleged stranger provided to Eley was so completely inaccurate that appellant could not have been identified by Eley's insurance company or the authorities but for Eley's proactive decision to photograph appellant's license plate. In short, the evidence of appellant's guilt was overwhelming, and, any error that may have occurred in not admitting the impeachment testimony of appellant's former attorney was harmless.

### III. CONCLUSION

Consequently, for all of these reasons, we affirm appellant's conviction.

Affirmed.